**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| GINGER GORDON, individually, and as next-of-kin to the deceased CHARLES THOMAS GORDON, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. _____ |
| CORECIVIC OF TENNESSEE, LLC, as owner and operator of WHITEVILLE CORRECTIONAL FACILITY, CHANCE LEEDS, COREY MOON, TRACY WILLIAMS, HARDEMAN COUNTY, TENNESSEE, MARLO DAVIS, MALIK JONES-SMITH, JASON TURNER, | § § § § § § § § § § § | JURY DEMANDED |
| *Defendants.* | § | |

## COMPLAINT

For her Complaint against the Defendants, the Plaintiff states to the Court and the Jury as follows:

### I.  INTRODUCTION

1.     On November 20, 2022, Charles Thomas Gordon was brutally murdered in a severely understaffed, unsupervised pod at Whiteville Correctional Facility, a private prison operated by CoreCivic of Tennessee, LLC ("CoreCivic").

2.     Because CoreCivic officials failed to secure Mr. Gordon's pod, failed to clear it of weapons, failed to lock it down, and failed to ensure that it was adequately staffed before Mr. Gordon's murder, Mr. Gordon was fatally stabbed at least seven times by four

inmates, causing his death. *See* **Ex. 1**.

3. Mr. Gordon's pod was supposed to be secure at the time he was murdered.

4. The CoreCivic Defendants also knew that Mr. Gordon's safety was in jeopardy before he was murdered. A short time before his death, Mr. Gordon was involved in an altercation with other inmates involving contraband knives. That incident was believed to be gang-related; the CoreCivic Defendants knew that the risk of a retaliatory attack against Mr. Gordon was high as a result of that incident; and Mr. Gordon was briefly placed in isolation for his safety afterward. Shortly after being removed from isolation, though, Mr. Gordon was returned to an understaffed pod that had not been cleared of weapons and was brutally stabbed to death by four inmates using contraband knives.

5. Due to CoreCivic's consistent, years-long non-compliance with minimum safety and security standards and its chronic violation of contractual staffing requirements, *see* **Ex. 2**—deficiencies regarding which CoreCivic officials and Hardeman County are specifically placed on notice on at least a quarterly basis, *see, e.g., id.*—Mr. Gordon's pod was not secured on the day of his murder, allowing four inmates to attack Mr. Gordon and fatally stab him multiple times in the chest, neck, back, and hand using contraband knives.

6. CoreCivic—which changed its name from Corrections Corporations of America in 2017 after that name became synonymous with the most insidious aspects of America's private prison industry—is the nation's most notorious private prison operator. To maintain its profit margin—and as a result of its chronic and profit-motivated deliberate indifference to inmate health and safety—CoreCivic serially underinvests in prison staff, security, and inmate healthcare at its prisons, leading to predictable and

horrific results.[1]

7. Due to CoreCivic's chronic and deliberate understaffing policies, Mr. Gordon's pod was understaffed on the day of his murder, and the CoreCivic Defendants failed to ensure that it was cleared of contraband weapons.

8. The fact that Mr. Gordon's pod was understaffed on the day of his murder was not an anomalous event. In fact, *every* CoreCivic prison in Tennessee was understaffed on the day of Mr. Gordon's murder, and *every* CoreCivic prison in Tennessee had been consistently understaffed for *years*.

9. On notice both generally that CoreCivic's understaffing policies result in extreme and preventable inmate-on-inmate violence and specifically that its understaffing had resulted in near-fatal gang violence in Mr. Gordon's pod a short time before his death, the CoreCivic Defendants still took no meaningful action to secure the pod, to ensure that all weapons had been removed from it, or to ensure that it was adequately staffed to prevent predictable retaliatory violence.

10. As a result, Mr. Gordon was brutally murdered by four other inmates who stabbed him repeatedly in the chest, neck, back, and hand.

11. This lawsuit—filed by Mr. Gordon's widow—seeks an award of damages for Mr. Gordon's wrongful death and for Ms. Gordon's own loss of consortium.

---

[1] *See, e.g.*, Allison Kite, *For-profit Kansas prison an understaffed 'hell hole' of violence, death and drugs*, KANSAS REFLECTOR (Oct. 7, 2021), https://kansasreflector.com/2021/10/07/for-profit-kansas-prison-an-understaffed-hell-hole-of-violence-death-and-drugs/; Samantha Michaels, *The Feds Just Slammed One of the Country's Biggest Private Prison Companies—Once Again*, MOTHER JONES (April 26, 2017), https://www.motherjones.com/politics/2017/04/justice-department-audit-CoreCivic-marshal-service-leavenworth/; Cassandra Stephenson, *A TN inmate was fatally beaten for coffee at a private prison. His widow seeks justice*, JACKSON SUN (May 29, 2019), https://www.jacksonsun.com/story/news/2019/05/29/CoreCivic-tennessee-lawsuit-alleges-inmate-died-due-understaffing-lack-medical-care-earl-johnson/1272710001/; Daniel Arkin, *Tennessee Audit Finds Rampant Understaffing, Other Issues at Prisons*, NBC NEWS (Nov. 14, 2017), https://www.nbcnews.com/news/all/tennessee-audit-finds-rampant-understaffing-other-issues-prisons-n820746.

-3-

## II. PARTIES

12.     Plaintiff Ginger Gordon is the widowed wife of decedent Charles Gordon—a 32-year-old man who died while incarcerated at Defendant CoreCivic's Whiteville Correctional Facility on November 20, 2022. Ms. Gordon is a citizen and resident of Smithville in DeKalb County, Tennessee.

13.     Defendant CoreCivic of Tennessee, LLC, is a private prison corporation. CoreCivic owns and operates Whiteville Correctional Facility, the facility where Mr. Gordon was murdered. CoreCivic is a citizen of Tennessee with its principal place of business and corporate headquarters located in Williamson County, Tennessee. CoreCivic may be served through its registered agent at CoreCivic of Tennessee, LLC, Registered Agent: C T CORPORATION SYSTEM, 300 MONTVUE RD, KNOXVILLE, TN 37919-5546.

14.     Defendant Chance Leeds is a citizen of Tennessee who at all times relevant to this complaint was employed by CoreCivic as the warden at Whiteville Correctional Facility. Defendant Leeds is a CoreCivic policymaker with the authority to hire staff at salary levels approved by Defendant CoreCivic, and he had the ultimate responsibility of ensuring the daily safety and security of the facility where Mr. Gordon was murdered.

15.     Defendant Corey Moon is a citizen of Tennessee who at all times relevant to this Complaint was employed as the Shift Supervisor at CoreCivic's Whiteville Correctional Facility. On the day of Mr. Gordon's death, Defendant Moon was responsible for ensuring the adequate staffing of Mr. Gordon's pod.

16.     Defendant Tracy Williams is a citizen of Tennessee who at all times relevant to this Complaint was employed as the Assistant Chief of Security at CoreCivic's Whiteville Correctional Facility. On the day of Mr. Gordon's death, Defendant Williams

was responsible for ensuring the day-to-day safety and security of Mr. Gordon's pod.

17.     Defendant Hardeman County is a county government in Tennessee. At all times relevant to this Complaint, Hardeman County contracted with Defendant CoreCivic to operate Whiteville Correctional Facility pursuant to the County Correctional Incentives Act of 1981. Hardeman County may be served with process through its counsel and upon Jimmy Sain, Hardeman County Mayor, 100 Main Street, Bolivar, TN 38008.

18.     Defendant Marlo Davis is a dangerous inmate in the custody of the Nashville-headquartered Tennessee Department of Correction. He is currently incarcerated at Morgan County Correctional Complex.

19.     Defendant Malik Jones-Smith is a dangerous inmate in the custody of the Nashville-headquartered Tennessee Department of Correction. He is currently incarcerated at Morgan County Correctional Complex.

20.     Defendant Jason Turner, at all times relevant to this complaint, was a dangerous inmate housed at CoreCivic's Whiteville Correctional Center. He is currently a dangerous fugitive who is at large because the Tennessee Department of Correction erroneously released him despite his pending First-Degree Murder charge for murdering Mr. Gordon. Mr. Turner's current whereabouts are unknown.

### III.  JURISDICTION AND VENUE

21.     This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. § 1331.

22.     This Court has supplemental jurisdiction to adjudicate the Plaintiff's state law claims related to the Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

23.     As the judicial district in which Defendant CoreCivic is headquartered and

resides, and all Defendants being residents of the State of Tennessee, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

24.     As the judicial district in which Defendant CoreCivic makes its calculated decisions to underinvest in staffing in its Tennessee facilities, venue is independently proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the district in which a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred.

25.     The Plaintiff has authority to maintain this wrongful death action as the surviving spouse of the deceased pursuant to Tenn. Code Ann. § 20-5-107(a).

## IV.  FACTUAL ALLEGATIONS

26.     At all times relevant to this Complaint, Charles Gordon was an inmate housed at Whiteville Correctional Facility, a private, for-profit prison that is owned, managed, and operated by Defendant CoreCivic.

27.     On November 20, 2022, Mr. Gordon was violently attacked by four other inmates wielding contraband knives.

28.     Mr. Gordon's murder followed a gang-related incident where another inmate was transported to an outside hospital by helicopter with puncture wounds to his back. Although Mr. Gordon was listed internally as an aggressor in that incident, he maintained that he was being robbed and had to defend himself.

29.     Specifically, in September 2022, Mr. Gordon and three other inmates were involved in an incident where two other inmates were stabbed.

30.     After that incident, CoreCivic recovered three knives in a subsequent search.

31.     CoreCivic also briefly locked down the entire facility following the incident, noting internally that because the incident involved suspected gang members, the impact of its occurrence could be "facility wide."

32.     Violence is rampant at Whiteville Correctional Facility, and the Defendants all knew it.  Another inmate was stabbed to death at Whiteville Correctional Facility on October 18, 2022, roughly a month after the September 2022 incident and a month prior to Mr. Gordon's murder.  Shyra Sherfield, *Inmate stabbed to death at Tennessee correctional facility*, ACTION NEWS 5 (Oct. 21, 2022), https://www.actionnews5.com/2022/10/21/inmate-stabbed-death-tennessee-correctional-facility/ (**Ex. 3**).  The next day, yet another inmate was stabbed to death at CoreCivic's Hardeman County Correctional Facility right next door.  *See* **Ex. 4**.  All of these incidents involved contraband knives that CoreCivic knew or should have known riddled their facilities.[2]

33.     Despite knowing that Mr. Gordon would likely be a target after the September 2022 incident, CoreCivic failed to take meaningful action to secure Mr. Gordon's pod or his personal safety after removing him from isolation.  In particular, CoreCivic failed to clear Mr. Gordon's pod of weapons and failed to ensure that it was adequately staffed following an incident that CoreCivic employees had already noted could have a "facility wide" impact prior to Mr. Gordon's murder.

34.     CoreCivic has recently confirmed what it characterized as ongoing "staffing challenges" at its Tennessee facilities, including at Whiteville Correctional Facility.  *See* Kyle Peppers, *CoreCivic official responds to concerns about Whiteville Correctional conditions*, WBBJ EYEWITNESS NEWS 7 (September 14, 2023), https://www.wbbjtv.com/2023/09/14/whiteville-correctional-official-responds-to-

---

[2] Nor is CoreCivic's contraband problem limited to knives at its Whiteville Facility. The same year that Mr. Gordon was murdered, at least six inmates died by overdosing on contraband narcotics. *See* Paige Pfleger, *28 people have died of overdoses in Tennessee's prisons this year. Lawsuits blame understaffing and easily available drugs.*, WPLN NEWS (October 5, 2022), https://wpln.org/post/28-people-have-died-of-overdoses-in-tennessees-prisons-this-year-lawsuits-blame-understaffing-and-easily-available-drugs/.

concers-about-facilitys-conditions/ (**Ex. 5**).

35.    At the time of Mr. Gordon's murder, the CoreCivic Defendants all had actual knowledge that CoreCivic chronically understaffs dozens of critical posts—including security posts—at its Tennessee facilities, including at Whiteville Correctional Facility.

36.    CoreCivic's chronic understaffing contributes to violence and diminishes the safety and security of its facilities.

37.    Understaffing allows violent attacks to unfold without intervention and to become fatal before staff arrive.

38.    Understaffing allows contraband weapons—including knives—to go undetected due to resource constraints that preclude meaningful and regular searches for weapons to be completed.

39.    As a result, Mr. Gordon was effortlessly attacked by four other inmates who brutally murdered him in an understaffed pod using contraband knives that the CoreCivic Defendants failed to detect or clear before his murder.

40.    Because CoreCivic has continued to turn a blind eye to the problem of understaffing-created violence in CoreCivic facilities generally and at Whiteville Correctional Facility, specifically, the extreme and outsized degree of violence and preventable death continues to this day.

41.    Further, the risk of retaliatory violence substantially increases in the immediate aftermath of a gang-related attack, and gang activity in general increases the risk of violence.  All CoreCivic Defendants had actual knowledge of these facts at the time of Mr. Gordon's murder, and all Defendants had actual knowledge of the problem of gang-related violence at Whiteville Correctional Facility.

42.    All CoreCivic Defendants had specific knowledge that, since Mr. Gordon

-8-

was involved in a gang-related incident in September, he was subject to a risk of retaliatory inmate-on-inmate violence.

43.     All CoreCivic Defendants were aware of the existence and prevalence of gang membership at Whiteville Correctional Facility, and all inmates believed to be associated with gangs are given an STG ("Security Threat Group") designation that identifies their membership.

44.     Still, the CoreCivic Defendants left Mr. Gordon's pod understaffed and unsecured after the gang-related attempted homicide in September 2022, even after noting internally the potential "facility wide" impact that the incident could impose.

45.     Because of the CoreCivic Defendants' failure to staff and secure Whiteville Correctional Facility, another inmate was killed in October 2022 using contraband knives that the CoreCivic Defendants had failed to detect or clear.  Even after that homicide, though, the Defendants still did not ensure that Mr. Gordon's pod was adequately secured and staffed or that Whiteville Correctional Facility was cleared of weapons.

46.     Due to the CoreCivic Defendants' failure to properly secure or staff Mr. Gordon's pod—and in the wake of multiple previous and recent stabbing incidents, at least one of which was gang-related—Marlo Davis, Malik Jones-Smith, and Jason Turner were able to violently attack Mr. Gordon using contraband knives and fatally stab him repeatedly before staff intervened, causing Mr. Gordon's death.

47.     No CoreCivic staff members intervened as Mr. Gordon was being fatally stabbed, even as his murder was being viewed live on security video.[3]

---

[3] Due to CoreCivic's refusal to provide responsive public records bearing on Mr. Gordon's homicide in response to a public records request regarding it and CoreCivic's affirmative efforts to conceal its misconduct, the Plaintiff has been unable to determine whether any staff were present and available to intervene while Mr. Gordon was being stabbed but failed to do so, or whether, instead, there were no staff

48. Once discovered, Mr. Gordon was transported to Bolivar General Hospital at 9:00 pm. He was pronounced dead at 9:53 p.m.

49. An autopsy was conducted on November 21, 2022.

50. The autopsy revealed eight separate wounds—seven stab wounds and one incised wound. The autopsy additionally documented six separate abrasions. *See* **Ex. 1**.

51. Mr. Gordon's injuries included one stab wound to his chest, two stab wounds to his neck, three stab wounds to his back, one stab wound to his hand, and an incised wound to his left middle finger. *Id.* at 5.

52. Mr. Gordon also had abrasions above his eye, on his lower lip, ear, and chin, and on the back of his arm and hand.

53. The injuries to Mr. Gordon's hands were defensive wounds indicating that Mr. Gordon was protecting himself and, for a time, was able to protect himself. Help did not arrive before his injuries became fatal, however.

54. The medical examiner determined that Mr. Gordon's fatal wound was an eight-inch-deep stab wound to his chest, which resulted in hemothorax and pneumothorax. Mr. Gordon's death was ruled a homicide.

55. Defendant Marlo Davis has since been indicted for first degree murder and is scheduled to stand trial on January 9, 2024.

56. Defendant Malik Jones-Smith has since been indicted for first degree murder and is scheduled to stand trial on January 10, 2024.

57. Defendant Jason Turner has since been indicted for first degree murder and is scheduled to stand trial on January 16, 2024, although Mr. Turner has been at-large

---

present. Should the Plaintiff later discover, during the course of this lawsuit, that CoreCivic staff members were present and available to intervene but failed to do so, the Plaintiff will add them as Defendants.

since he was mistakenly released from custody after completing an unrelated sentence.

58.     If Mr. Gordon's pod had been staffed in accordance with minimum contractual staffing requirements, Mr. Gordon would not have been fatally stabbed.

59.     If the CoreCivic Defendants had ensured that Mr. Gordon's pod was cleared of weapons, Mr. Gordon's murder would have been prevented.

60.     If the CoreCivic Defendants had properly cleared Whiteville Correctional Facility of weapons after the separate stabbing death that occurred in October 2022, Mr. Gordon's murder would have been prevented.

61.     If the CoreCivic Defendants had ensured Mr. Gordon's reasonable safety and complied with their duty to protect him from foreseeable inmate-on-inmate violence, Mr. Gordon's murder would have been prevented.

62.     Whiteville Correctional Facility continues to be understaffed, in contravention of TDOC contract requirements, and CoreCivic continues to maintain inadequate security measures to prevent foreseeable violent outcomes in its facilities, including Whiteville Correctional Facility.

63.     Despite actual knowledge of the vastly outsized rate of murder, death, and inmate-on-inmate violence at CoreCivic's Tennessee facilities, to date, Tennessee's regulators, legislators, and judges have yet to conclude that the situation is unacceptable or to take any meaningful action to prevent the cycle of predictable death at CoreCivic's Tennessee facilities from recurring.

## V.  CAUSES OF ACTION

CLAIM #1: 42 U.S.C. § 1983—FAILURE TO PROTECT MR. GORDON FROM INMATE-ON-INMATE VIOLENCE (DEFENDANTS LEEDS, MOON, AND WILLIAMS)

64.     The Plaintiff reincorporates and realleges the foregoing allegations as if fully

set forth herein.

65.     At all times relevant to this Complaint, Defendants Leeds, Moon, and Williams had legal duties under the Eighth Amendment to protect Mr. Gordon from violence at the hands of other prisoners and to ensure his reasonable safety while exercising the traditional state function of imprisoning inmates.

66.     Because Defendant CoreCivic performs a traditional state function while operating a state prison, at all times relevant to this Complaint, Defendant Leeds, Moon, and Williams acted under the color of state law.

67.     An inmate's Eighth Amendment claim based upon deliberate indifference to inmate safety is "akin to recklessness," and it carries both objective and subjective components.

68.     Unlike the State of Tennessee, Defendant CoreCivic is not entitled to Eleventh Amendment immunity and may be held liable under § 1983 if its official policies or customs resulted in the Plaintiff's injuries.

69.     Defendant Leeds failed to protect Mr. Gordon from violence at the hands of other prisoners by implementing and ratifying CoreCivic's understaffing policies and failing to ensure the reasonable safety of Whiteville Correctional Center through adequate staffing and regular, comprehensive weapons checks.

70.     Defendant Moon failed to protect Mr. Gordon from violence at the hands of other prisoners by failing to ensure that Mr. Gordon's pod was adequately staffed on the day he was murdered.

71.     Defendant Williams failed to protect Mr. Gordon from violence at the hands of other prisoners by failing to ensure that Mr. Gordon's pod was secure of weapons on the day he was murdered.

72. Defendants Leeds, Moon, and Williams failed to ensure Mr. Gordon's reasonable safety by failing to ensure that Mr. Gordon was protected from retaliatory violence despite the known risk of such violence that he faced.

73. Defendants Leeds, Moon, and Williams knew that Mr. Gordon faced a substantial risk of serious harm after the violent September 2022 incident, but they disregarded those risks and failed to take reasonable measures to abate them.

74. At the time Mr. Gordon was murdered, the pervasive risk of harm to inmates at his facility manifested in actual harm and constant inmate-on-inmate attacks, only a fraction of which were officially documented.

75. At the time Mr. Gordon was murdered, Defendants Leeds, Moon, and Williams had been exposed to information concerning the risk of physical harm to inmates housed at Whiteville Correctional Facility arising from gang-related violence, and they must have known about it.

76. Defendant CoreCivic has an unconstitutional policy or practice of maintaining chronically inadequate staffing levels, which leaves inmates such as Mr. Gordon exposed to serious risks of violence that are known to prison officials at CoreCivic's facilities, including Whiteville Correctional Facility.

77. Defendants Leeds, Moon, and Williams were personally involved in the implementation of Defendant CoreCivic's unconstitutional understaffing policy and participated in its implementation.

78. Defendant CoreCivic's unconstitutional understaffing policy proximately resulted in Mr. Gordon's death, and adequate staffing in Mr. Gordon's pod would have prevented his death.

79. Defendants Leeds, Moon, and Williams were specifically aware of and on

-13-

notice of the heightened number of assaults at Whiteville Correctional Facility resulting from understaffing.

80. Defendants Leeds, Moon, and Williams were specifically aware of and on notice of Whiteville Correctional Facility's documented problem of failing to protect inmates from assault by other inmates—information known both internally and reported publicly over the course of multiple widely reported public audits.

81. Defendant Leeds—as the warden of Whiteville Correctional Facility at the time of Mr. Gordon's death—was aware of and complicit in Defendant CoreCivic's policies and practices of chronically understaffing its Tennessee facilities.

82. Despite their knowledge of the danger created by the combination of understaffing and failure to secure his pod of weapons, Defendants Leeds, Moon, and Williams failed to ensure that the posts in Mr. Gordon's pod on the day of his murder were adequately staffed and that the pod was secured of weapons.

83. Defendant Leeds consciously neglected to remedy Whiteville Correctional Facility's chronic understaffing policy despite his personal knowledge of the extraordinary and frequently fatal consequences that resulted from it.

84. Defendant Leeds also consciously neglected to remedy Whiteville Correctional Facility's chronic understaffing policy despite his personal knowledge of the prevalence of gang activity and accompanying violence that plagues the facility.

85. Defendants Leeds, Moon, and Williams not only knew and were on notice generally that CoreCivic's chronic understaffing policy materially increased the risk of violence and death; instead, due to another gang-related incident that involved Mr. Gordon mere months beforehand, they also knew and were on notice that the specific understaffing of Mr. Gordon's pod on November 20, 2022 could and likely would lead to

retaliatory violence in that pod, and that Mr. Gordon, specifically, was especially vulnerable to assault due to his presence in the pod, asserted membership in a gang, and involvement in a previous gang-related stabbing incident for which retaliation had not yet occurred.

86. Defendants Leeds, Moon, and Williams deliberately failed to protect Mr. Gordon by choosing not to take any protective measures to protect Mr. Gordon from a violent retaliatory response to the September 2022 incident on the date of his death.

87. Due to all of these failures, Mr. Gordon was brutally stabbed to death by four other inmates.

CLAIM #2: LIABILITY UNDER *MONELL V. DEPT. OF SOCIAL SERVICES*, 436 U.S. 658 (1978)
(AS TO DEFENDANT CORECIVIC)

88. The Plaintiff reincorporates and realleges the foregoing allegations as if fully set forth herein.

89. Defendant CoreCivic has adopted a policy, practice, and custom of severely understaffing its Tennessee facilities, including Whiteville Correctional Facility, without regard to inmate safety because understaffing is more profitable.

90. Although not formally approved, this unconstitutional policy, practice, and custom of severely understaffing its Tennessee facilities, including Whiteville Correctional Facility, is so widespread as to have the force of law.

91. Each of the individual CoreCivic Defendants had knowledge of and acquiesced in CoreCivic's established understaffing practice.

92. CoreCivic's custom of severe, chronic understaffing at Whiteville Correctional Facility is so permanent and well settled as to constitute a custom or usage with the force of law and is deeply embedded in Whiteville Correctional Facility's daily

functioning.

93.    Defendant CoreCivic's custom of severe, chronic, unconstitutional understaffing at Whiteville Correctional Facility was ratified by Defendant Leeds in his capacity as warden and implemented by Defendants Moon and Williams on a daily basis.

94.    CoreCivic's custom of tolerance or acquiescence of federal rights violations is so thoroughly documented and widespread that federal rights violations and CoreCivic are practically synonymous.

95.    As a result of multiple audits identifying CoreCivic's severe understaffing issues and thousands of violent incidents—both reported and unreported—at the facility over a period of years, CoreCivic had actual knowledge of Whiteville Correctional Facility's chronic understaffing problems, but it opted not to staff Whiteville Correctional Facility adequately because doing so would have been less profitable.

96.    At the time of Mr. Gordon's murder, CoreCivic's employees—including Defendant Leeds, CoreCivic's on-site policymaker—had actual knowledge that Whiteville Correctional Facility's chronic understaffing problems resulted in an extraordinary and outsized level of inmate-on-inmate violence at the facility.

97.    CoreCivic's policy and practice of unconstitutional understaffing is widespread, rampant, and endemic to CoreCivic's prison facilities, including Whiteville Correctional Facility.

98.    The CoreCivic Defendants knew of the heightened and chronic safety risks to inmates resulting from understaffing at Whiteville Correctional Facility, but they tolerated, maintained, and promoted understaffing to generate greater profits for CoreCivic at the expense of the safety of inmates like Mr. Gordon.

99.    Mr. Gordon's death is attributable to Defendant CoreCivic's policy, practice,

-16-

and custom of failing to ensure an adequate, constitutional, or contractually-compliant level of staffing at Whiteville Correctional Facility. This policy, practice, and custom was explicitly or impliedly authorized by Defendant CoreCivic, and Defendant Leeds ratified and knowingly acquiesced in it.

100. If Mr. Gordon's pod had been properly staffed on the day of his murder, the attack on him could have been prevented or stopped before becoming fatal; staff would have been available to clear it of the weapons that were used to murder him; and he would not be dead.

101. Instead, because Whiteville Correctional Facility was chronically understaffed, including at the time of Mr. Gordon's murder, Mr. Gordon was the victim of a preventable murder, and CoreCivic's custom of severe, chronic unconstitutional understaffing was the moving force behind his death.

102. Whiteville Correctional Facility's chronic understaffing continued and continues to remain unremedied even after Mr. Gordon's death.

CLAIM #3: NEGLIGENCE
(DEFENDANTS CORECIVIC, LEEDS, MOON, AND WILLIAMS)

103. The Plaintiff reincorporates and realleges the foregoing allegations as if fully set forth herein.

104. Defendants CoreCivic, Leeds, Moon, and Williams owed a legal duty of care to Mr. Gordon to protect him from reasonably foreseeable harm.

105. Because these Defendants understood Mr. Gordon to be a member of or associated with a gang and labeled him as such, the Defendants knew of or had reason to anticipate the retaliatory attack on Mr. Gordon after the September 12, 2022 incident. Indeed, an internal report regarding the September 12, 2022 of which Defendants

-17-

CoreCivic, Leeds, Moon, and Williams were aware specifically observed that the attack could have a "facility wide" impact. *See* **Ex. 6**.

106. Defendants CoreCivic, Leeds, Moon, and Williams had actual and constructive notice of the specific risk of foreseeable harm that Mr. Gordon's killers posed to Mr. Gordon, and they had reason to anticipate the attack on him after September 12, 2022 incident.

107. Accordingly, these Defendants knew or should have known that Mr. Gordon would become the victim of a retaliatory attack, but they failed to use reasonable care to prevent it.

108. Defendants' breaches of their duty of care to Mr. Gordon proximately caused Mr. Gordon to die at the hands of violent and dangerous felons who should never have been housed at Whiteville Correctional Facility at all given their status as dangerous felons.

CLAIM #4: NEGLIGENCE/NEGLIGENT SUPERVISION
(DEFENDANT HARDEMAN COUNTY)

109. Whiteville Correctional Facility is "not being operated pursuant to the Private Prison Contracting Act of 1986[,]" which only permits Defendant CoreCivic to operate directly a single private prison in Tennessee. *See Friedmann v. Corr. Corp. of Am.*, 310 S.W.3d 366, 378 (Tenn. Ct. App. 2009).

110. Instead, Whiteville Correctional Facility is "being operated pursuant to [a] contract[] with [a] local governmental entit[y] rather than the State of Tennessee, . . . pursuant to the County Correctional Incentives Act of 1981, Tenn. Code Ann. § 41–8–101, et seq." *Id.* at 379.

111. This Act permits Defendant Hardeman County to contract with Defendant

CoreCivic to "house additional **nondangerous** felony offenders locally." *See* Tenn. Code Ann. § 41-8-102 (emphasis added).

112. This restriction notwithstanding, at the time of Mr. Gordon's murder, and separate and apart from any civil rights violations at Whiteville Correctional Facility, CoreCivic housed dangerous felony offenders at Whiteville Correctional Facility.

113. Mr. Gordon was murdered at the hands of dangerous felony offenders.

114. Defendant Hardeman County knew that CoreCivic illicitly housed dangerous felony offenders at Whiteville Correctional Facility at the time of Mr. Gordon's death.

115. Independent of any civil rights violations at Whiteville Correctional Facility, Defendant Hardeman County also knew that CoreCivic illicitly housed dangerous felony offenders at Whiteville Correctional Facility at the time of Mr. Gordon's death at a time when Whiteville Correctional Facility was understaffed and violating a host of TDOC contract requirements about which it was regularly apprised. *See, e.g.,* **Ex. 2**.

116. Even so, and independent of any civil rights violations at Whiteville Correctional Facility, Hardeman County unreasonably failed to exercise due care to ensure CoreCivic's compliance with requirements that only nondangerous felony offenders be housed at Whiteville Correctional Facility.

117. Independent of any civil rights violations at Whiteville Correctional Facility, Defendant Hardeman County had actual knowledge of the extraordinary and outsized degree of inmate-on-inmate violence at Whiteville Correctional Facility and its pervasive non-compliance with contract obligations, including staffing obligations, at the time of Mr. Gordon's murder.

118. Even so, and independent of any civil rights violations at Whiteville

Correctional Facility, Hardeman County unreasonably failed to exercise due care to ensure staffing compliance and failed to ensure a reasonable degree of safety at the facility.

119. In advance of Mr. Gordon's death, the TDOC regularly notified Hardeman County that CoreCivic was not in compliance with TDOC contract requirements, including by failing to fill critical posts at Whiteville County Correctional Facility. *See, e.g.,* **Ex. 2**.

120. Notwithstanding its actual knowledge that CoreCivic was chronically violating TDOC contract requirements, including related to failure to staff critical security posts, but independent of any civil rights violations at Whiteville Correctional Facility, Hardeman County chose not to meaningfully supervise CoreCivic or take action to remedy deficient security conditions there because CoreCivic agreed to indemnify Hardeman County for any resulting damages or violations.

121. At the time of Mr. Gordon's murder, and unrelated to any civil rights violations, Defendant Hardeman County had a duty to all inmates at Whiteville Correctional Facility, including Mr. Gordon, to ensure adequate staffing and safety of Whiteville Correctional Facility.

122. Unrelated to any civil rights violations, by failing to ensure adequate staffing and safety of Whiteville Correctional Facility despite its actual knowledge of its contractor's chronic understaffing and other pervasive noncompliance with contract requirements while housing dangerous felony offenders there, Defendant Hardeman County breached this duty of care.

123. Unrelated to any civil rights violations, Defendant Hardeman County knew, at the time of Mr. Gordon's death, that CoreCivic was unfit to handle the job of

maintaining an adequate level of staffing and safety at Whiteville Correctional Facility and that it routinely failed to comply with its contractual obligations.

124.    But for Defendant Hardeman County's failure to ensure that CoreCivic was complying with the County Correctional Incentives Act of 1981 and its failure to ensure that CoreCivic was meeting its contract obligations regarding staffing and other requirements affecting inmate safety at Whiteville Correctional Facility, Mr. Gordon would not have died.

125.    Unrelated to any civil rights violations, Defendant Hardeman County's failure to ensure that CoreCivic was complying with the County Correctional Incentives Act of 1981 and its failure to ensure that CoreCivic was meeting its contract obligations regarding staffing and other requirements affecting inmate safety at Whiteville Correctional Facility proximately caused Mr. Gordon's death, resulting in Plaintiff's actual damages.

CLAIM #5: BATTERY
(DEFENDANTS DAVIS, JONES-SMITH, AND TURNER)

126.    The Plaintiff reincorporates and realleges the foregoing allegations as if fully set forth herein.

127.    Defendants Davis, Jones-Smith, and Turner collectively approached Mr. Gordon, each with a knife, and stabbed Mr. Gordon.

128.    Without Mr. Gordon's consent, Defendants Davis, Jones-Smith, and Turner each intentionally, unlawfully, and harmfully made contact with the body of Mr. Gordon by stabbing him with knives, causing his death.

129.    Defendants Davis, Jones-Smith, and Turner have all been indicted for first degree murder for their role in killing Mr. Gordon.

130.     Accordingly, Defendants Davis, Jones-Smith, and Turner are all liable to the Plaintiff for damages.

<u>CLAIM #6: LOSS OF CONSORTIUM</u>
<u>(ALL DEFENDANTS)</u>

131.     The Plaintiffs reincorporate and reallege the foregoing allegations as if fully set forth herein.

132.     Tenn. Code Ann. § 25-1-106 allows for an award of loss of consortium and other damages for the death of one's spouse.

133.     The Defendants' wrongful acts, faults, omissions, and tortious misconduct caused Ms. Gordon to suffer consortium and other damages arising from the wrongful death of her husband.

134.     Accordingly, Ms. Gordon is entitled to an award of damages including the pecuniary value of Mr. Gordon's life and the loss of her husband's attention, guidance, care, protection, companionship, cooperation, affection, and love.

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

1.  That proper service issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2.  That the Plaintiff be awarded all compensatory, consequential, and incidental damages to which Plaintiff is entitled in an amount not less than $2.5 million;

3.  That the Plaintiff be awarded punitive damages in an amount not less than $7.5 million;

4.  That the Plaintiff be awarded her reasonable attorney's fees for her § 1983 claims

-22-

pursuant to 42 U.S.C. § 1988(b);

5.  That a jury of 12 be empaneled to try this cause;

6.  That pre-judgment and post-judgment interest be awarded to the Plaintiff;

7.  That the Plaintiff be awarded all further relief to which she is entitled.

Respectfully submitted,

/s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
MELISSA K. DIX, BPR #038535
LINDSAY SMITH, BPR #035937
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*
