**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| GINGER GORDON, individually, and as next-of-kin to the deceased CHARLES THOMAS GORDON, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 3:23-CV-01195 |
| CORECIVIC OF TENNESSEE, LLC, *et al.,* | § § § | JURY DEMANDED |
| *Defendants.* | § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO HARDEMAN COUNTY'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT [Doc. 12]**

## I.  INTRODUCTION

Defendant Hardeman County has moved, under Fed. R. Civ. P. 12(b)(6), to dismiss the Plaintiff's state law negligence claims against it.  *See* Doc. 12, Def. Hardeman Cnty's Mot. to Dismiss; Doc. 12-1, Mem. in Supp. of Def. Hardeman Cnty's Mot. to Dismiss.  As grounds, Hardeman County asserts that:

1.      Notwithstanding the Plaintiff's extensive and specific allegations that her state law negligence claims against Hardeman County are *separate from and unrelated to* any civil rights violations, *see* Doc. 1, Compl., at ¶ 112 ("separate and apart from any civil rights violations . . ."); *id.* at ¶ 115 ("Independent of any civil rights violations at Whiteville Correctional Facility . . ."); *id.* at ¶ 116 (same); *id.* at ¶ 117 (same); *id.* at ¶ 118 (same); *id.* at ¶ 120 (same); ¶ 121 ("unrelated to any civil rights violations . . ."); *id.* at ¶ 122 (same); *id.* at ¶ 123 (same); *id.* at ¶ 125 (same), the Plaintiff's state law negligence

claims against Hardeman County should nonetheless be treated as if they arise out of federal civil rights claims that she has not asserted against Hardeman County, *see* Doc. 12-1, Mem. in Supp. of Def. Hardeman Cnty's Mot. to Dismiss, at 4–7;

2.    After involuntarily construing the Plaintiff's state law negligence claims against Hardeman County as if they arise out of federal civil rights claims that she has not asserted against Hardeman County, the Plaintiff's state law negligence claims against Hardeman County should be dismissed under Tennessee's Governmental Tort Liability Act (GTLA), which removes Hardeman County's immunity as to negligence claims but *not* as to civil rights claims, *see id.*; and

3.    The Plaintiff's "negligence per se" claim—a claim that the Plaintiff has not actually asserted, and which does not accurately characterize the negligence claims that the Plaintiff has asserted against Hardeman County—"fails." *See id.* at 7–9.

For several reasons, Hardeman County's arguments are unpersuasive.

*First*, the Plaintiff is the master of her own Complaint. With that context in mind, the Plaintiff has asserted cognizable and distinct state law negligence claims against Hardeman County alone, as the GTLA permits her to do. The Plaintiff has also separately asserted cognizable civil rights claims against the CoreCivic Defendants and the Defendants who murdered her husband—but *not* against Hardeman County—under 42 U.S.C. § 1983. The Plaintiff has a right to do so. Thus, the availability of federal civil rights claims (and, for that matter, intentional tort claims) against *other* Defendants in this action does not affect—let alone preclude—the Plaintiff from maintaining state law negligence claims against Hardeman County, which are "separate" from, "independent" of, and "unrelated to" the Plaintiff's civil rights claims. *See* Doc. 1, Compl., at ¶ 112; *id.* at ¶ 115; *id.* at ¶ 116; *id.* at ¶ 117; *id.* at ¶ 118; *id.* at ¶ 120; ¶ 121; *id.* at ¶ 122; *id.* at ¶ 123; *id.* at

¶ 125.

*Second*, Hardeman County's contention that—as a matter of state law—a prison conditions and inmate assault case like this one is *really* a civil rights claim that is precluded by the GTLA is foreclosed by state law. *See, e.g., King v. Anderson Cnty.*, 419 S.W.3d 232, 235, n.1 (Tenn. 2013) (adjudicating state law negligence claims in prison conditions and inmate assault case filed under the GTLA, while expressly observing that the plaintiff had filed separate federal civil rights claims against the same defendant under the same facts); *Sanford v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 01-A-01-9606-CV00251, 1997 WL 24863, at *13 (Tenn. Ct. App. Jan. 24, 1997) (ordering that judgment be entered against municipal defendant for negligence *and also* reversing judgment dismissing federal § 1983 constitutional claims arising out of the same facts with instructions to adjudicate them); *Lewis v. Shelby Cnty.*, No. W2014-00408-COA-R3-CV, 2015 WL 1778071, at *1 (Tenn. Ct. App. Apr. 17, 2015) (reversing grant of summary judgment to county in GTLA negligence case arising from alleged understaffing and inmate assault).

*Third*, Hardeman County misconstrues and mischaracterizes the Plaintiff's negligence and negligent supervision claims. Those claims are not "negligence per se" claims, as Hardeman County intimates. Further, as actually pleaded, the Plaintiff has asserted straightforward and well-pleaded negligence and negligent supervision claims arising from Hardeman County's negligence and negligent supervision, the plausibility of which Hardeman County has not even contested.

For all of these reasons, Hardeman County's motion to dismiss should be denied in its entirety.

## II. FACTS

On November 20, 2022, Charles Thomas Gordon was brutally murdered in a severely understaffed, unsupervised pod at Whiteville Correctional Facility, a private prison operated by CoreCivic of Tennessee, LLC ("CoreCivic"). *See* Doc. 1, Compl., at ¶ 1. The offenders who murdered Mr. Gordon were "dangerous felony offenders." *See id.* at ¶ 113.

Due to the deliberate indifference of several CoreCivic employees and CoreCivic itself, the Plaintiff has asserted specific civil rights claims against the CoreCivic Defendants in this case, *see id.* at 11–15 (failure to protect claim asserted against "Defendants Leeds, Moon, and Williams"); *id.* at 15–17 (*Monell* claim asserted "As to Defendant CoreCivic"), as well as state law negligence claims, *see id.* at 17–18. The Plaintiff has also maintained battery claims against three of the inmates who murdered her husband. *See id.* at 21–22.

The Plaintiff has <u>not</u> asserted any civil rights (or intentional tort) claims against Defendant Hardeman County, though, which does not operate the prison at issue directly. *See id.* at 18–21. Indeed, the Plaintiff has specifically alleged—repeatedly—that her negligence claims against Hardeman County are "[u]nrelated to any civil rights violations" that the Plaintiff has alleged against some of the other Defendants in this case. *See id.* at ¶¶ 121, 122, 123, 125; *see also id.* at ¶¶ 112, 115, 116, 117, 118, 120.

Instead, as to "Defendant Hardeman County" alone, the Plaintiff has asserted distinct negligence and negligent supervision claims. *Id.* at 18–21. The Plaintiff's state law negligence claims against Hardeman County are not federal civil rights claims, and they do not purport to be. *Id.* Instead, the Plaintiff's state law negligence claims against Hardeman County are premised, among other things, upon the facts that:

- 4 -

1.    "Mr. Gordon was murdered at the hands of dangerous felony offenders[,]" *id.* at ¶ 113, and "Defendant Hardeman County knew that CoreCivic illicitly housed dangerous felony offenders at Whiteville Correctional Facility at the time of Mr. Gordon's death[,]" *id.* ¶ 114;

2.    Whiteville Correctional Facility's illicit housing of dangerous felony offenders occurred in contravention of a state statute that permits Defendant Hardeman County to contract with CoreCivic to house "nondangerous" offenders only, *see id.* at ¶¶ 109–112;

3.    "Hardeman County unreasonably failed to exercise due care to ensure CoreCivic's compliance with requirements that only nondangerous felony offenders be housed" at Mr. Gordon's prison, *see id.* at ¶ 116;

4.    "Defendant Hardeman County also had actual knowledge of the extraordinary and outsized degree of inmate-on-inmate violence at Hardeman County Correctional Facility and its pervasive non-compliance with contract obligations, including staffing obligations, at the time of Mr. Gordon's murder[,]" *see id.* at ¶ 117;

5.    "Hardeman County unreasonably failed to exercise due care to ensure staffing compliance and failed to ensure a reasonable degree of safety at the facility[,]" *id.* at ¶ 118, even though "[t]he TDOC regularly notified Hardeman County that CoreCivic was not in compliance with TDOC contract requirements, including by failing to fill critical posts at Whiteville County Correctional Facility [,]" *see id.* at ¶ 119 (citing Doc. 1-2, Ex. 2 to Compl.);

6.    "At the time of Mr. Gordon's murder, and unrelated to any civil rights violations, Defendant Hardeman County had a duty to all inmates at Whiteville Correctional Facility, including Mr. Gordon, to ensure adequate staffing and safety of

- 5 -

Whiteville Correctional Facility," *see id.* at ¶ 121, and "[u]nrelated to any civil rights violations, by failing to ensure adequate staffing and safety of Whiteville Correctional Facility despite its actual knowledge of its contractor's chronic understaffing and other pervasive noncompliance with contract requirements while housing dangerous felony offenders there, Defendant Hardeman County breached this duty of care[,]" *id.* at ¶ 122;

7.      "Unrelated to any civil rights violations, Defendant Hardeman County knew, at the time of Mr. Gordon's death, that CoreCivic was unfit to handle the job of maintaining an adequate level of staffing and safety at Hardeman County Correctional Facility and that it routinely failed to comply with its contractual obligations[,]" *id.* at ¶ 123;

8.      "But for Defendant Hardeman County's failure to ensure that CoreCivic was complying with the County Correctional Incentives Act of 1981 and its failure to ensure that CoreCivic was meeting its contract obligations regarding staffing and other requirements affecting inmate safety at Whiteville Correctional Facility, Mr. Gordon would not have died[,]" *id.* at ¶ 124; and

9.      "Unrelated to any civil rights violations, Defendant Hardeman County's failure to ensure that CoreCivic was complying with the County Correctional Incentives Act of 1981 and its failure to ensure that CoreCivic was meeting its contract obligations regarding staffing and other requirements affecting inmate safety at Whiteville Correctional Facility proximately caused Mr. Gordon's death, resulting in Plaintiff's actual damages." *Id.* at ¶ 125.

## III.  LEGAL STANDARD

The Defendant's motion to dismiss under Rule 12(b)(6) is subject to familiar standards.  "Under Rule 12(b)(6), the complaint is viewed in the light most favorable to

plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs." *Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). "To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gulfside Casino P'ship v. Churchill Downs Inc.*, No. 20-6423, 2021 WL 2550402, at *2 (6th Cir. June 22, 2021) (cleaned up).

## IV. ARGUMENT

### A.  The Plaintiff has not asserted any civil rights claims against Defendant Hardeman County.

"[A] plaintiff is 'the master of its own complaint[.]'" *See United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, No. 3:20-CV-00948, 2022 WL 80238, at *5 (M.D. Tenn. Jan. 7, 2022) (quoting *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002)); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987) ("the plaintiff is the master of the complaint"); *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 449 (6th Cir. 2014) ("[Plaintiff] is the master of her own complaint, and we will not read into her complaint a new claim that she did not allege.").

Here, as "the master" of her own complaint, *id.*, the Plaintiff has alleged pure state law negligence claims against Hardeman County, *see* Doc. 1, Compl., at 18–21, the plausibility of which Hardeman County does not even contest. *See generally* Doc. 12-1, Mem. in Supp. of Def. Hardeman Cnty's Mot. to Dismiss (maintaining no plausibility-based claim for dismissal). By contrast, the Plaintiff has *not* alleged any civil rights claims against Hardeman County. Instead, the Plaintiff's civil rights claims are asserted against the CoreCivic Defendants alone. *See* Doc. 1, Compl., at 11–17.

The Plaintiff has a right to frame her claims under the theory of liability she chooses. As a result, this Court is forbidden from accepting Hardeman County's invitation to construe the Plaintiff's pure state law negligence claims—which the Plaintiff has specifically asserted against Hardeman County and has alleged are "unrelated to" any civil rights violations—as federal civil rights claims. which the Plaintiff deliberately has *not* asserted against Hardeman County. If the Plaintiff had wanted to assert separate and competing, alternatively pleaded theories of negligence and civil rights violations against Hardeman County, though, she would have been within her rights to do so. *See, e.g., Thompson v. City of Lebanon*, No. 3:11-CV-00392, 2014 WL 12677063, at *21 (M.D. Tenn. June 10, 2014), *aff'd sub nom. Thompson v. City of Lebanon, Tennessee*, 831 F.3d 366 (6th Cir. 2016) ("a reasonable jury could find either that McKinley fired intentionally—whether as a warning shot or directly at Thompson—or that the shot was accidental and negligent. These two scenarios are not the same circumstances. The first would certainly give rise to a civil rights claim, but the second would not. If the jury finds that Thompson's death was caused only by the unintentional but negligent act of McKinley, there is no civil rights violation out of which the case arises. In this latter circumstance, Lebanon would be vicariously liable for the officers' negligence. The Lebanon Motion as to Count IV is therefore DENIED.") (cleaned up).

Nor do the cases that Hardeman County cites for a contrary proposition support its position on the matter. For one thing, every such case involved a plaintiff who simultaneously asserted GTLA-permitted claims and federal civil rights claims *against the same defendant*, which the Plaintiff here has not done. Even if the Plaintiff had taken this approach, though, state law would have allowed it. *See, e.g., Sanford*, 1997 WL 24863, at *13 (ordering that judgment be entered against municipal defendant for

- 8 -

negligence under the GTLA *and also* reversing judgment dismissing overlapping federal constitutional claims arising out of the same facts with instructions to adjudicate them on their merits).

Further, review of the Plaintiff's Complaint confirms that the Plaintiff's state law negligence and negligent supervision claims do not "arise out of exactly the same circumstances as" the Plaintiff's civil rights claims. *See Partee v. City of Memphis, Tenn.*, 449 F. App'x 444, 448 (6th Cir. 2011). None of the Plaintiff's asserted civil rights claims— which are exclusively asserted against Defendants other than Hardeman County—arises out of Hardeman County's negligent supervision of the facility in which Mr. Gordon was murdered. *See* Doc. 1, Compl., at 11–21. Similarly, none of the Plaintiff's civil rights claims arises out of Hardeman County's knowledge that "CoreCivic illicitly housed dangerous felony offenders at Hardeman County Correctional Facility" in contravention of Tenn. Code Ann. § 41-8-102. *See id.* at ¶¶ 112–15. None of the Plaintiff's civil rights claims arises out of Hardeman County's failure to exercise due care in its oversight role, either. *See id.* at ¶¶ 116–25.

Put simply: The theories of relief that the Plaintiff has asserted against Hardeman County versus the other defendants in this action are independent of one another; they do not turn on the same factual allegations or circumstances; and they are "analytically different." *See Partee*, 449 F. App'x. at 449 (noting that—in error—the district court "did not parse the GTLA issue on a claim-by-claim basis, and therefore did not consider the distinction between a cause of action based on Callahan's conduct in arresting Partee and one based on allegations of the City's independently negligent acts in hiring, supervising, or disciplining the officer. A claim of the former type is analytically different from a claim that the City's own negligence proximately caused the Partees' harm, which ultimately

- 9 -

occurred through Callahan's allegedly foreseeable acts.").  Hardeman County's motion to dismiss fails as a result.  *Id.; see also Sanford*, 1997 WL 24863, at *13 (ordering that judgment be entered against municipal defendant for negligence under the GTLA *and also* reversing judgment dismissing overlapping federal constitutional claims arising out of the same facts with instructions to adjudicate them on their merits); *DePalma v. Metro. Gov't of Nashville, Davidson Cnty., Tennessee*, 40 F. App'x 187, 192 (6th Cir. 2002) (affirming judgment of GTLA negligence liability where the overlapping "federal civil-rights claims were tried to a jury, and the state-law tort claims were tried to the court."); *Alexander v. Beale St. Blues Co.*, 108 F. Supp. 2d 934, 948–49 (W.D. Tenn. 1999) ("The court therefore finds that plaintiffs' alternatively pleading civil rights violations and intentional tort claims against the officers does not automatically invoke the exception to the waiver of immunity on the negligence claim against the City. . . . To hold otherwise would preclude plaintiffs from bringing both a civil rights action and a negligence action against a Tennessee municipality.  The court is aware of no case that has interpreted the GTLA in such a manner."); *Willis v. Barksdale*, 625 F. Supp. 411, 419 (W.D. Tenn. 1985) ("The court need not reach that question, however, because Tennessee law provides an immunity-free remedy for injuries proximately caused by a state employee's negligence in the performance of a non-discretionary function. Pursuant to T.C.A. Section 29–20–205(1), plaintiff could have sued the county based upon the allegedly negligent acts and omissions of the health department's medical personnel whose direct and immediate responsibility it was to ensure the physical well-being of inmates in the jail. The functions required of them to safeguard Lott's health clearly were not discretionary so as to give rise to either the common law or statutory discretionary function immunity. Moreover, T.C.A. Section 29–20–205(2), which retains sovereign immunity for claims seeking redress of

injuries arising from invasions of "civil rights," would not have barred a claim based on the medical personnel's acts because that section "only restores municipal immunity for civil rights claims as such, not those for negligence as a matter of common law.") (quoting *McKenna v. City of Memphis*, 544 F.Supp. 415, 419 (W.D.Tenn.1982)).

Further, given that "deliberate indifference entails something more than mere negligence[,]" *see Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the exact circumstances giving rise to the Plaintiff's state law negligence claims against Defendant Hardeman County are properly characterized as being *incompatible* with a theory of civil rights relief asserted under § 1983. Thus, this is not a circumstance in which § 1983 claims are "couched" as negligence claims, and where the Plaintiff has alleged both negligence and civil rights claims against the same defendant under an identical set of facts. *See Tinkle v. Dyer Cnty., Tennessee*, No. 18-01124-STA-EGB, 2018 WL 6840155, at *2 (W.D. Tenn. Dec. 31, 2018) ("if a plaintiff alleges that a defendant violated his civil rights, he cannot alternatively bring a claim under the GTLA because to do so would violate the GTLA's preservation of immunity for alleged civil rights violations."). Instead, the Plaintiff has asserted state law negligence claims against Hardeman County because Hardeman County is liable for state law negligence, but she has *not* asserted federal civil rights claims against Hardeman County because Hardeman County's purely negligent acts do not constitute civil rights violations.

For all of these reasons, this Court should respect the Plaintiff's right to plead different theories against different Defendants based on different facts. As a result, it should reject Hardeman County's invitation to construe the Plaintiff's state law negligence claims against Hardeman County as arising out of civil rights violations under circumstances when the Plaintiff: (1) has not asserted civil rights claims against

- 11 -

Hardeman County; and (2) has repeatedly alleged that her negligence claims are unrelated to any civil rights violations.

**B.     The Plaintiff has not asserted any civil rights claims against Defendant Hardeman County.**

Separate from any other matter, the theory of dismissal that Hardeman County advances is incompatible with binding state precedent, which permits plaintiffs to maintain alternatively-pleaded claims even when one alleged theory precludes another.

In 2002, the Sixth Circuit affirmed a judgment of GTLA negligence liability where overlapping "federal civil-rights claims were tried to a jury, and the state-law tort claims were tried to the court." *DePalma*, 40 F. App'x at 192. *DePalma* was far from the first federal decision to do so, either before or since. *See, e.g., McKenna*, 544 F. Supp. at 419, *aff'd*, 785 F.2d 560 (6th Cir. 1986) ("the Court concludes that Tenn. Code Ann., s 29-20-205(2) only restores municipal immunity for civil rights claims as such, not those for negligence as a matter of common law.  Plaintiff has a claim of at least $20,000 based on the evidence submitted to this Judge.  Concededly, it is unusual for a municipality under state law to have liability for one effect of a specific negligent or wrongful act, the firing of a pistol, but to be immune for another effect, the deprivation of civil rights."); *Lee v. Metro. Gov't of Nashville/Davidson Cnty. Tennessee*, No. 306-0108, 2007 WL 1059105, at *3 (M.D. Tenn. Apr. 4, 2007) ("The [GTLA] provides nine exceptions to the removal of immunity. None of those exceptions are applicable to this action. . . .  **[W]hile the plaintiffs have asserted independent civil rights violations in this case, a claim of common negligence does not fall within the scope of that exception.**") (citing *McKenna*, 544 F.Supp. 415); *Keys v. City of Chattanooga*, No. 1:08-CV-204, 2009 WL 2244615, at *4 (E.D. Tenn. July 27, 2009) ("To the extent Plaintiff

reasserted his federal civil rights claims under state law, the City of Chattanooga and Hamilton County are immune from suit. However, where Plaintiff asserted a negligent act by an employee of the City of Chattanooga or Hamilton County, the civil rights exception would not apply and they would not immune from suit. Thus, the civil rights exception does not immunize the City of Chattanooga and Hamilton County from negligent actions by their employees and summary judgment is not appropriate on Plaintiff's claims that Moses negligently injured him and Hamilton County employees negligently failed to provide adequate medical care."); *Brown v. City of Memphis*, 440 F. Supp. 2d 868, 875 (W.D. Tenn. 2006) ("Defendants argue that although Plaintiffs assert various sources of injury, the only real source of injury is the alleged violation of their civil rights. They assert that since such a claim is exempted under § 29–20–205(2), the City has immunity. *Id.* This attempt at blurring the lines between Plaintiffs' federal civil rights claims under § 1983 and the separate common law negligence claims fails. **Plaintiffs' claims of robbery and false imprisonment cannot legitimately be swept under the rug of "civil rights" claims. To adopt this approach would be to take a step backwards to the "overly broad application of the intentional tort exception" discredited by the Tennessee Supreme Court in *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73, 84 (Tenn.2001). Defendants' motion to dismiss Plaintiffs' negligence claims is DENIED**.") (internal citations omitted) (emphasis added); *Gregory v. City of Memphis*, No. 07-02445, 2013 WL 1966969, at *12 (W.D. Tenn. May 10, 2013) ("The relationship between Gregory's civil rights claims and Taylor's negligence claim is too tenuous to support an argument that Taylor's claim is "in essence a civil rights suit." *Campbell v. Anderson Cnty*., 695 F.Supp.2d 764, 778 (E.D.Tenn.2010); *see also Mckenna v. City of Memphis*, 544 F.Supp. 415, 419

- 13 -

(W.D.Tenn.1982) (the TGTLA 'only restores municipal immunity for civil rights claims as such, not those for negligence as a matter of common law.'). It would deny Taylor's rights under the TGTLA to say that he could not bring a claim sounding in negligence because a third party brought claims arising from the incident based on an alleged violation of that party's civil rights."); *Sanford*, 1997 WL 24863, at *13 (ordering that judgment be entered against municipal defendant for negligence under the GTLA *and also* reversing judgment dismissing overlapping federal constitutional claims arising out of the same facts with instructions to adjudicate them on their merits).

In 2011, the Sixth Circuit observed that Tennessee courts had not yet explicitly determined how to treat cases involving an overlap between GTLA-exempt-but-federally-cognizable civil rights claims and GTLA-permitted negligence claims. *See Partee*, 449 F. App'x at 449 ("The Tennessee state courts have not explicitly determined whether the limited factual overlap between these claims would be sufficient to render the City immune from the negligent-hiring claim under the GTLA. Generally, in such a situation, the court should 'predict how the state's highest court would interpret the statute.'") (quoting *Fed. Deposit Ins. Co. v. Stables*, 573 F.3d 289, 298 (6th Cir.2009)). Previous federal decisions had similarly encouraged Tennessee courts to resolve the question. *See, e.g., McKenna*, 544 F. Supp. at 419, *aff'd*, 785 F.2d 560 ("The Tennessee courts should be the ones to address this problem of immunity . . . .").

In 2013, in *King v. Anderson Cnty.*, the Tennessee Supreme Court explained how such a circumstance should be approached, and it held that GTLA-permitted negligence claims may be adjudicated on their merits even when overlapping federal claims have been asserted under the same facts. *See King*, 419 S.W.3d at 235, n.1. In *King*, the Tennessee Supreme Court adjudicated—on the merits—a state law negligence claim

arising under the GTLA in a prison conditions and inmate assault case filed against a county government. *See id.* at 235. As relevant to Hardeman County's motion here, the Tennessee Supreme Court also did so *while specifically observing* that the *King* plaintiff was "also seeking recourse for violations of his constitutional rights pursuant to 42 U.S.C. § 1983." *See id.* at 235, n.1. Notably, the federal court that was presiding over the *King* plaintiff's overlapping federal claims had even made a specific finding that the state and federal claims involved "arise out of the same facts and form part of the same case or controversy." *King v. Anderson Cnty., Tenn.*, No. 3:10-CV-420, 2010 WL 4791889, at *3 (E.D. Tenn. Nov. 18, 2010).

*King* was not the first Tennessee Supreme Court decision to support—explicitly— the notion that an alternatively-pleaded § 1983 claim does not preclude a GTLA-permitted negligence claim, either. The Tennessee Supreme Court held the same in *Ezell v. Cockrell*, 902 S.W.2d 394 (Tenn. 1995). *See id.* (analyzing both a negligence and § 1983 claim brought against a municipality). It also did so implicitly in *Matthews v. Pickett*, a case that reached the Tennessee Supreme Court as a certified question under circumstances when alternative negligence and civil rights theories had been alleged under the same set of facts. *Compare Matthews v. Pickett Cnty., Tennessee*, 46 F. App'x 261, 262 (6th Cir. 2002) (observing that the *Matthews* plaintiff's original complaint "included a claim that defendants violated her federal constitutional rights"), *with Matthews v. Pickett Cnty.*, 996 S.W.2d 162, 163 (Tenn. 1999) (famously holding that a municipality "may be held liable for the petitioner's damages under the Governmental Tort Liability Act" under the same set of facts).

Embracing a plaintiff's right to assert such competing theories, *King*—a four-Justice opinion joined by, among others, Justice Janice Holder, *see* 419 S.W.3d at 235

- 15 -

("CORNELIA A. CLARK, J. delivered the opinion of the Court, in which JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ.")—effectively adopted Justice Holder's earlier concurrence in *Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 89 (Tenn. 2001) (Holder, J., concurring). There, Justice Holder explained:

> **We have noted that "plaintiffs are free to pursue several alternative theories of recovery and to structure their claims in the manner that is most beneficial to them."** *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909 (Tenn.1999). Rule 8.01 of the Tennessee Rules of Civil Procedure, governing claims for relief in pleadings, provides that "[r]elief in the alternative or of several different types may be demanded." Furthermore, this Court has recognized that an intentional tortious act does not necessarily supersede a prior negligent act. *See Turner v. Jordan*, 957 S.W.2d 815 (Tenn.1997) (addressing the comparative fault of a psychiatrist for failure to warn of a patient's dangerous propensities); *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn.1991) (finding that a car owner could be held liable in a wreck after leaving the keys in a car that was subsequently stolen; the car theft was not necessarily an intervening act breaking the chain of causation). Instead, a plaintiff may recover damages from both the intentional tortfeasor and the original negligent tortfeasor. *See id.* **The plaintiff in *Potter* should have been allowed to pursue separate claims against the City—one based upon the intentional torts committed by the police officer and one based upon the City's negligence in failing to properly screen its employees. The second claim arises out of the City's negligent employment practices, not the police officer's intentional torts. It therefore is not barred by the intentional tort exception under § 29−20−205(2).**

*Id.* (emphases added).

*King's* analysis is not compatible with Hardeman County's theory of the GTLA, though. Under Hardeman County's contrary theory, because the *King* plaintiff's GTLA negligence claim "clearly ar[ose] out of the same set of facts as" his § 1983 claim, *see* Doc. 12-1, Mem. in Supp. of Def. Hardeman Cnty's Mot. to Dismiss, at 5, the plaintiff's negligence claim should have been precluded by Tenn. Code Ann. § 29-20-205(2). It was not, though. Instead, it reached trial, and despite the Tennessee Supreme Court's explicit recognition of and specific reference to the case history and overlapping constitutional

claim involved, *see King*, 419 S.W.3d at 235, n.1, the Tennessee Supreme Court adjudicated the Plaintiff's GTLA-based negligence claim on its merits. The Tennessee Supreme Court's determination on that issue of state law—whether a GTLA negligence claim can proceed when related civil rights claims are asserted—is also controlling here. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("In construing questions of state law, a federal court must apply state law in accordance with the controlling decisions of the highest court of the state."). Accordingly, this Court may safely disregard any contrary precedent suggesting otherwise—particularly federal precedent that predates *King*. *Cf. Sanford*, 1997 WL 24863, at *13 (ordering that judgment be entered against municipal defendant for negligence under the GTLA *and also* reversing judgment dismissing overlapping federal constitutional claims arising out of the same facts with instructions to adjudicate them on their merits).

The Plaintiff also observes that Hardeman County's unduly broad reading of the GTLA becomes farcical when the same reasoning is applied to other GTLA-exempt tort claims. In support of its reading, Hardeman County insists that: "Plaintiff's state tort law claims for negligence arise out of the same facts forming the basis of his [sic] civil rights claims and, therefore, fail as a matter of law." *See* Doc. 12-1 at 9. But the GTLA also categorically preserves immunity for all intentional torts, so "the intentional torts of assault and battery that are committed by an employee acting within the scope of his employment do not remove governmental immunity." *Spearman v. Shelby Cnty. Bd. of Educ.,* 637 S.W.3d 719, 733 (Tenn. Ct. App. 2021), *appeal denied* (May 14, 2021). Under Hardeman County's broad reading, then, the fact that the Plaintiff's husband was intentionally murdered by four inmates—three of whom have been sued for battery here, see Doc. 1, Compl., at 21–22—should similarly preclude the Plaintiff's claims against

- 17 -

Hardeman County on the theory that the Plaintiff's claims arise out of the same facts and circumstances as her battery claims. Tennessee law flatly rejects this theory, though. *See, e.g., Lewis*, 2015 WL 1778071, at *1 (reversing grant of summary judgment to county in GTLA negligence case arising from inmate assault).

There is also another straightforward reason not to accept Hardeman County's theory on the matter, which is that § 1983 deliberate indifference claims and state law negligence claims are materially distinct. As noted above, "deliberate indifference entails something more than mere negligence[.]" *See Farmer*, 511 U.S. at 835. Further, "§ 1983 liability must be based on more than respondeat superior, or the right to control employees." *See, e.g., Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982)). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (cleaned up). Further still, a plaintiff may not sue a county for an individual person's act of deliberate indifference and must instead "sue the actual individuals acting 'under color of [law]' responsible for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 629 (6th Cir. 2011) (Batchelter, J., dissenting) (citing 42 U.S.C. § 1983).

By contrast, a simple negligence claim is a simple negligence claim, and that theory of liability is not restricted by the same limitations. As a result, a plaintiff may reasonably proceed against a county defendant on a mere negligence theory in a prison conditions and inmate assault case without involuntarily having that theory construed as being—or arising out of—a civil rights claim. *See, e.g., Lewis*, 2015 WL 1778071, at *1 (reversing

- 18 -

grant of summary judgment to county in GTLA negligence case arising from alleged understaffing and inmate assault). To the extent that an individual defendant at a prison exhibited deliberate indifference, there is also no reason why that defendant may not also be sued for a civil rights claim as well, just as there is no reason why a defendant like CoreCivic may not also be sued for a *Monell* claim. Put simply: The claims are distinct from one another; they are not incompatible; and any federal precedent that presumes otherwise is wrong.

For all of these reasons, the civil rights exception to the GTLA will only bar a state law negligence claim when a plaintiff's complaint can *only* be construed as "asserting a claim against the [defendant] for violation of [the plaintiff's] civil rights[.]" *See Lankford v. City of Hendersonville*, No. M2016-02041-COA-R3-CV, 2018 WL 1559971, at *8 (Tenn. Ct. App. Mar. 29, 2018). As such, a district court must "parse the GTLA issue on a claim-by-claim basis," and it must "consider the distinction between a cause of action based on" actual civil rights violations and a municipality's "independently negligent acts . . . ." *See Partee*, 449 F. App'x at 448.

Alternatively, at minimum, this Court should certify to the Tennessee Supreme Court the question of state law presented by Hardeman County's motion to determine whether—in its 2013 opinion in *King* and other cases—the Tennessee Supreme Court meant what it said when it adjudicated that plaintiff's GTLA-permitted negligence claim on its merits while expressly recognizing that the plaintiff had also asserted overlapping federal claims *against the same defendant* under § 1983. *See King*, 419 S.W.3d at 235 at n.1; *accord Matthews*, 996 S.W.2d at 163;[1] *Sanford*, 1997 WL 24863, at *13 (ordering that

---

[1] As noted, under Hardeman County's contrary interpretation of the GTLA, *Matthews* should similarly have resulted in a holding that the plaintiff's GTLA claim arose out of a civil rights claim and was categorically

judgment be entered against municipal defendant for negligence under the GTLA _and_
_also_ reversing judgment dismissing overlapping federal constitutional § 1983 claims
arising out of the same facts with instructions to adjudicate them on their merits).  Given
the importance of the GTLA and aggrieved citizens' rights to recover under it, the
Tennessee Supreme Court has not hesitated to accept such certified questions in the past.
_See, e.g., Matthews_, 996 S.W.2d at 163 ("The Sixth Circuit Court of Appeals certified the
following question for our resolution: 'May the existence of an order of protection give
rise to a 'special duty' to protect, and, if so, does the special duty extend to the protection
of property?' We accept certification and hold under the facts of this case that the special
duty exception to the public duty doctrine is applicable.  Accordingly, the respondents
may be held liable for the petitioner's damages under the Governmental Tort Liability Act
('GTLA'), Tenn. Code Ann. § 29–20–201 et seq.").  As such, in lieu of denying Hardeman
County's motion outright, the question of state law that Hardeman County presents in its
motion should be certified to the Tennessee Supreme Court.

## C. __The Plaintiff has not asserted any "negligence per se" claim.__

The balance of Hardeman County's motion to dismiss purports to explain why
"Plaintiff's negligence per se claim fails."  _See_ Doc. 12-1, Mem. in Supp. of Def. Hardeman
Cnty's Mot. to Dismiss, at 7–9.  Of course, assuming without conceding that a negligence
per se claim would fail,[2] the Plaintiff has not asserted a "negligence per se" claim against

---

barred because of that.  _See Matthews_, 46 F. App'x at 262 (6th Cir. 2002) (observing that the _Matthews_
plaintiff's original complaint "included a claim that defendants violated her federal constitutional rights").
That was not _Matthews_' holding, though.  Instead, the Tennessee Supreme Court held that "the respondents
may be held liable for the petitioner's damages under the Governmental Tort Liability Act[.]"  _See_
_Matthews_, 996 S.W.2d at 163.

[2] The Plaintiff observes that Tenn. Code Ann. § 41-8-102 _does_ impose a duty or prohibits an act "'for the
benefit of . . . the public,'" _Smith v. Owen_, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992), and she further
observes that inmates are among the statute's intended beneficiaries, given the statute's expressly stated
purpose of "[h]elping alleviate overcrowding in state correctional facilities  . . . ."  _See_ Tenn. Code Ann. § 41-
8-102(1).

Hardeman County. Instead, the Plaintiff has asserted negligence and negligent supervision claims. *See* Doc. 1, Compl., at 18 ("Claim #4: Negligence/Negligent Supervision."). That presumably ends the necessary analysis, because Hardeman County does not contest either the plausibility or the well-pleaded nature of the Plaintiff's actual claims as she has alleged them. *Cf. Vetrano v. State*, No. M2015-02474-COA-R3-CV, 2017 WL 3411921, at *5 (Tenn. Ct. App. Aug. 8, 2017) (approving of negligence claim in the context of prison oversight, and holding that "[t]o prevail on her claim, Ms. Vetrano must establish that the prison officials' negligence proximately caused a foreseeable injury.").

It is true that the Plaintiff's negligence and negligent supervision claims against Hardeman County reference the fact that "Defendant Hardeman County knew that CoreCivic illicitly housed dangerous felony offenders at Hardeman County Correctional Facility at the time of Mr. Gordon's death" in contravention of Tenn. Code Ann. § 41-8-102. *See* Doc. 1, Compl., at ¶¶ 109–114. That reality does not convert negligence and negligent supervision claims into a negligence per se claim. However, it does preclude Hardeman County from pretending that its negligence was discretionary in some respect—an entirely different defense to GTLA liability that has not been placed at issue here. Because, as actually pleaded, the Plaintiff has asserted cognizable negligence and negligent supervision claims arising from Hardeman County's negligence and negligent supervision of the CoreCivic prison at issue in this lawsuit, though, the Plaintiff's well-pleaded negligence claims may proceed.

## V. CONCLUSION

For the foregoing reasons, Hardeman County's Motion to Dismiss (Doc. 12) should be **DENIED**.

- 21 -

Respectfully submitted,

/s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
MELISSA K. DIX, BPR #038535
LINDSAY SMITH, BPR #035937
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*

- 22 -

## CERTIFICATE OF SERVICE

       I hereby certify on this the 11th day of December, 2023, a copy of the foregoing document was filed electronically upon the individuals identified below. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on electronic filing receipt. All other parties will be served by regular U.S. Mail:

Nathan D. Tilly
Haynes T. Russell
Pentecost & Glenn
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305
ntilly@pgmfirm.com

*Attorney for CoreCivic Defendants*

J. Paul Brewer
MGC Law
120 Brentwood Commons Way, Suite 625
Brentwood, TN 37027
Paul.brewer@mgclaw.com

*Attorney for Hardeman County*

- 23 -