IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE, AT NASHVILLE

| | | |
|---|---|---|
| GINGER GORDON, | § § § § | |
| *Plaintiff*, | | |
| v. | § § § | Case No. 3:23-cv-01195 |
| CORECIVIC OF TENNESSEE, LLC, *et al.*, | § § § | |
| *Defendants*. | § | |

**MOTION OF DANIEL A. HORWITZ TO RECONSIDER THIS COURT'S ORDER DENYING HIS MOTION TO CLARIFY THAT LOCAL RULE 83.04 DOES NOT PROHIBIT COUNSEL FROM MAKING EXTRAJUDICIAL STATEMENTS ABOUT THIS ACTION AND INCORPORATED MEMORANDUM OF LAW**

## I. INTRODUCTION

Comes now Plaintiff's counsel Daniel A. Horwitz, and pursuant to Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."), respectfully moves this Court to reconsider and revise its January 22, 2024 Order (Doc. 40) denying the Movant's *Motion to Clarify that Local Rule 83.04 Does Not Prohibit Counsel From Making Extrajudicial Statements About This Action* (Doc. 31). For the reasons detailed below, this motion should be granted, and the Court's January 22, 2024 Order should be revised. The represented Defendants oppose the relief sought.

## II. ARGUMENT

Ms. Gordon brought this case because her husband was preventably murdered in one of

-1-

CoreCivic's chronically understaffed prisons. As Ms. Gordon's attorney, the undersigned must comply with this Court's local rules throughout the litigation. One of those rules, Local Rule 83.04, unlawfully restricts attorney speech through a facially unconstitutional burden-shifting framework that this Court's earlier order summarily declaring that L.R. 83.04 "is not" facially unconstitutional does not address. *See* Doc. 40 at 2.

A magistrate judge of this Court recently applied L.R. 83.04 against the undersigned in violation of the undersigned's constitutional right to speak publicly about the very problems in CoreCivic's prisons that his lawsuits seek to redress. In doing so, the Court determined that speech critical of CoreCivic violated LR 83.04, and it threatened to hold the undersigned in contempt if he sought media attention about his public-interest litigation against CoreCivic. Now that the undersigned has filed more cases against CoreCivic in this Court, he needs to know if he can exercise his constitutional right to speak freely about those cases—including this one—or if, instead, he must continue to heed this Court's warning to stay silent or face judicial sanctions.

This Court's recent denial of the undersigned's motion—which it entered before allowing the undersigned to Reply—leaves the undersigned with two options: He can refrain from engaging in constitutionally protected speech, or else, he can run the risk of sanctions that could carry serious consequences for himself and his clients. The First Amendment does not require the undersigned to make that choice before seeking relief. For about 18 months now, though, the credible threat of this Court enforcing LR 83.04 has chilled the undersigned's speech about his cases against CoreCivic. This motion thus seeks reconsideration of this Court's earlier order denying him relief. *See* Fed. R. Civ. P. 54(b); *Geeo v. Bonded Filter Co., LLC*, No. 3:22-cv-00359, 2023 WL 3871704, at *1 (M.D. Tenn. June 7, 2023) (noting that Rule 54(b) and this Court's common-law authority permit reconsideration of interlocutory orders at any time before final judgment).

A.     **This Court Has Authority to Determine How Its Rules Apply to This Case**

Because CoreCivic has previously invoked—and this Court has previously applied—LR 83.04 to censor the undersigned's speech about his litigation against CoreCivic, the undersigned's motion to clarify asked this Court to determine the undersigned's right to speak about Ms. Gordon's case. The Defendants responded by inaccurately characterizing the motion to clarify as one to reconsider the *Newby* gag order. This Court appears to have accepted that inaccurate framing by suggesting that the undersigned is merely "unhappy with how L.R. 83.04 was handled by another judge in another (now-settled) case brought by a different plaintiff against CoreCivic in this district." Doc. 40 at 2.

The undersigned's motion to clarify, however, did not seek what this Court incorrectly characterized as "quasi-appellate" review of the *Newby* gag order. Instead, *Newby* is relevant because it shows how this Court has previously interpreted LR 83.04; it demonstrates "a history of past enforcement against" the undersigned, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 (2014) (*SBA*); it shows how this Court's Local Rule restricts fundamental First Amendment guarantees; and it powerfully establishes the credible threat of enforcement that the undersigned faces right now. *See id.* ("Past enforcement against the same conduct is good evidence that the threat of enforcement is not "'chimerical.'") (quoting *Steffel v. Thompson*, 415 U.S. 452 (1974)).

If not for *Newby*, the undersigned would widely publicize the unacceptable and frequently fatal conditions in Tennessee's CoreCivic facilities. He would solicit media coverage and discuss publicly how CoreCivic officials have admitted under oath that its facilities have never been fully staffed and never will be, and he would discuss the TDOC's and state county governments' corresponding role in ensuring that CoreCivic's financial bottom line is protected at the expense of the inmates in CoreCivic's care. He would also detail how so many deaths in CoreCivic's Tennessee prisons—including Mr. Gordon's—could have been prevented if CoreCivic adequately

staffed its prisons, if it undertook meaningful efforts to protect the inmates in its care, and if it complied with minimum contract requirements that all of its Tennessee facilities chronically violate with the government's actual knowledge but minimal resulting consequence.

These statements are quintessentially protected speech. *See Mills v. State of Ala.*, 384 U.S. 214, 218 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs."). Under *Newby*'s reasoning, though, they violate this Court's local rules. That leaves the undersigned with two choices: (1) refrain from publishing his protected speech, or (2) publish, then litigate whether *Newby*'s reasoning was correct in response to a sanctions motions. The undersigned is unwilling to subject his client to the risk of sanctions, though. As a result, in the absence of a ruling from this Court, he must choose silence.

A ruling on the merits of the motion to clarify, then, is not an effort to secure quasi-appellate review of the *Newby* gag order. Instead, it is an effort to secure pre-enforcement review of a speech-restricting regulation. Such requests are "ordinary" in the First Amendment context, as this Court itself has observed in other settings. *See, e.g., Bongo Prods., LLC v. Lawrence*, 548 F. Supp. 3d 666, 678 (M.D. Tenn. 2021) ("The plaintiffs' claims fall well within the ordinary, well-established boundaries of pre-enforcement standing in the First Amendment context.").

The fact that the undersigned is an attorney who seeks review of a regulation that restricts attorney speech does not change the proper analysis. Neither Article III nor prudential standing considerations require an attorney to intentionally violate a court's rules—and endure the professional consequences of doing so—before he can challenge a court's prohibition on extrajudicial speech. *See Steffel*, 415 U.S. at 459. Instead, the credible threat of sanctions—like this Court's past threat of contempt for materially identical conduct—is enough to create a

-4-

Case 3:23-cv-01195   Document 43   Filed 01/30/24   Page 4 of 14 PageID #: 427

justiciable controversy. *SBA*, 573 U.S. at 165. As such, this Court's determination that it cannot consider an as-applied challenge until the Court applies LR 83.04 "in this case," Doc. 40 at 2, contravenes black-letter law.

The First Amendment protects "fragile interests," and restrictions on speech can discourage a person from engaging in protected activity. *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380 (1977). When that happens, "[s]ociety as a whole [is] the loser." *Secretary of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). That is why people who face a credible fear of punishment under a speech regulation are not required to provoke actual punishment to have standing to seek relief. *Steffel*, 415 U.S. at 459. Pre-enforcement challenges are thus a vital way to prevent restrictive laws from chilling speech by removing impediments to the "'open marketplace' of ideas protected by the First Amendment." *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 354 (2010) (citation omitted).

More than a half-century of Supreme Court precedent has instructed lower courts to adjudicate such pre-enforcement challenges for the simple reason that forcing speakers to endure enforcement proceedings before they can raise First Amendment claims would chill speech. Thus, to avoid unnecessary infringements on the First Amendment, someone who faces a "credible threat of prosecution" is "not be required to await and undergo [enforcement] as the sole means of seeking relief.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (emphasis added) (citation omitted); *see also MedImmune, Inc. v. Genetech, Inc*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge to basis for the threat."). Instead, a threat is deemed credible when there is a prohibitory statute or rule that is "recent and not moribund," *Doe v. Bolton*, 410 U.S. 179, 188 (1973), and where the government has not

-5-

Case 3:23-cv-01195   Document 43   Filed 01/30/24   Page 5 of 14 PageID #: 428

"disavowed any intention" of enforcing, *Babbitt*, 442 U.S. at 302.

Such a credible threat alone satisfies the injury-in-fact requirement for Article III purposes. *SBA*, 573 U.S. at 158. As recently as last year, the Supreme Court reiterated that the "credible threat" of enforcement empowers a federal court "[t]o clarify" a plaintiff's rights—even if they have never before engaged in the proscribed conduct. *303 Creative LLC v. Elenis*, 600 U.S. 570, 580 (2023). Nor does "the improbability of successful prosecution" defeat standing. *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Instead, the credible threat of enforcement alone—regardless of the odds of a successful outcome—is enough to chill speech and ripen the speaker's claim. *Id.*

Given this context, the undersigned's motion to clarify is justiciable in its entirety. If the undersigned speaks publicly about Ms. Gordon's case against CoreCivic, he must defend his speech in a proceeding before this Court. LR 83.04 thus imposes an actual, concrete, and redressable injury by preventing him from discussing this lawsuit with the media and the public, which he would do but for this Court's prohibition and recent enforcement against him.

Put another way: Were it not for LR 83.04, the undersigned would bring this case the public attention it deserves. Just as he did in *Newby* until this Court gagged him, he would seek out media attention, give interviews, and use social media to lay out Ms. Gordon's claims, criticize the government, and advocate for wholesale reform of CoreCivic's prisons and its contracts with the State of Tennessee. But for LR 83.04, the undersigned would also publicize the specific facts of this case, including the details of how Defendants knew Mr. Gordon's life was in danger and did nothing to protect him. He would place the attack in the broader context of the many tragic and avoidable civil-rights abuses in CoreCivic's state-funded facilities, too. That speech, however, would trigger enforcement under LR 83.04(a)(1)(A) & (B).

The undersigned's silenced speech is protected political advocacy about the government

and its contractors. The public has an interest in knowing and a right to know about the ways in which CoreCivic failed to protect Mr. Gordon and so many others like him, too. *See Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57 (1976) (First Amendment creates "reciprocal" right to listen). Even so, under credible threat from this Court, the undersigned has had to restrict his speech for well over a year now due to this Court's past interpretation of LR 83.04 and the Defendants' ongoing insistence that his speech violates this Court's rules.

The chill on the undersigned's speech is not merely subjective. As noted, in *Newby*, this Court applied LR 83.04 to prohibit the exact type of out-of-court statements that the undersigned would like to make now, and it threatened him with contempt if he "continued to seek out media attention." *Newby*, ECF 53 at 7 (Mot. to Clarify Ex. 2).

As an attorney currently litigating in this district, the undersigned is bound by this Court's local rules and must heed its warnings about how it enforces them. Moreover, the Defendants have demonstrated that they will invoke LR 83.04 if the undersigned speaks publicly about his cases against them. They have argued that "Plaintiff's counsel's repeated public statements about the *Newby* case violated Local Rule 83.04, and allowing him to tweet in a similar fashion about this case would do the same." They also insist that applying LR 83.04 in this way "does not violate the First Amendment."

To exercise his free-speech rights, then, the undersigned must risk further enforcement of LR 83.04. But First Amendment standing and ripeness principes do not require the undersigned to endure another gag order and risk being held in contempt if this Court agrees with *Newby*'s interpretation of LR 83.04. *See Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 330-31 (6th Cir. 2013) (credible threat of enforcement creates injury in fact). Instead, he is entitled to an adjudication now to determine whether he can speak without punishment.

This Court's determination that it must first apply LR 83.04 *in this case* before adjudicating an as-applied challenge to the rule's constitutionality is similarly wrong. It is the same error the Sixth Circuit made in *SBA*, 573 U.S. at 159, which the U.S. Supreme Court then corrected. *SBA* concerned an Ohio law that forbid "false statement[s]" during political campaigns and empowered "any person" to file a complaint alleging a violation of the law that would initiate proceedings against the speaker. *Id.* at 152–53. A political candidate filed a complaint with Ohio's Election Commission alleging that SBA employees made false statements about him, and the Commission found probable cause to pursue the enforcement. *Id.* at 154–55. Those proceedings did not conclude until after the candidate lost his election and withdrew his complaint. *Id.* At that point, SBA tried to challenge the speech restrictions in federal court, alleging that it intended to engage in similar speech in the future but that the past enforcement proceedings and the threat of future enforcement chilled that speech. *Id.* at 155. The Sixth Circuit held that the prior enforcement did not "show an imminent threat of *future* prosecution," in part because the Commission never concluded that its statements violated the law. *Id.* at 156. Any future threat, the Sixth Circuit argued, was speculative because SBA had not alleged that it planned to lie in the future. *Id.* at 156-57.

The Supreme Court reversed. The threat of enforcement was "[m]ost obviously" credible, the Court reasoned, given the "history of past enforcement" for similar conduct. *Id.* at 164. That threat was "even more substantial" given that the Commission found probable cause to carry on enforcement proceedings the last time. *Id.* And it was further "bolstered by the fact that authority to file a complaint" was not limited "to a prosecutor or agency." *Id.* Because anyone could initiate proceedings, political opponents had an incentive to use the law to silence critical speech. *Id.* The Sixth Circuit erred by focusing on SBA's insistence that it had not made false statements.

Regardless of the truth of those statements, there was still "every reason to think that similar speech in the future w[ould] result in similar proceedings."  *Id.* at 163.  And, as the Supreme Court reiterated yet again, there is simply no requirement that "a plaintiff who wishes to challenge the constitutionality of a law [] confess that he will in fact violate that law."[1]  *Id.*

      The case for ripeness here is even stronger than in *SBA*.  This Court has already concluded in closely analogous circumstances that the undersigned's speech violates LR 83.04.  The *Newby* gag order is "good evidence that the threat of future enforcement is not chimerical."  *See SBA*, 573 U.S. at 165 (cleaned up).  Ms. Gordon's case presents similar claims, brought by the same attorney, against the same Defendant that moved, successfully, to gag him before.  In nearly identical circumstances, *Newby* ruled that LR 83.04 prohibits *any* public advocacy against CoreCivic by an attorney litigating against the prison—even "general" comments, including a retweet of *someone else's* criticism of private prisons.  Until this Court says otherwise, "there is every reason to think" that LR 83.04 will continue to apply as it did in *Newby*.  *See SBA*, 573 U.S. at 163.  And just like the complaint-driven system in *SBA*, the fact that the Defendants themselves are empowered to, have before, and likely will again seek to enforce the rule to silence the undersigned's speech only bolsters the threat of enforcement that makes the motion to clarify justiciable.  LR 83.04 thus impermissibly empowers Defendants to silence all criticism from opposing counsel during

---

[1] Defendants try to avoid this conclusion by relying on the inapposite decision in *Fieger v. Mich. Supreme Court* to claim that the motion to clarify is not ripe.  *Fieger* held that an attorney lacks standing to bring a facial challenge to a rule when he is (1) not engaged in ongoing litigation and (2) has not articulated a desire to engage in prohibited conduct.  553 F.3d 955, 964 (6th Cir. 2009).  By contrast, the undersigned (1) is currently litigating the very case in which he is challenging the rule and (2) has articulated his desire to lay out his client's case to the media.  Nothing more is required.  Applying *Fieger* to this case would flout modern standing doctrine, as the Supreme Court has twice shown when it reversed the Sixth Circuit's attempts to extend *Fieger*, including in *SBA*, 573 U.S. at 165; *see also COAST Candidates PAC v. Ohio Elec. Comm'n*, 573 U.S. 928 (2014).

litigation, and the undersigned is entitled to a ruling on its constitutionality, both facially and as-applied to the speech the undersigned has explained he wants to publish but cannot without the credible threat of incurring sanctions.

Even putting *Newby*'s application of the rule to the side, LR 83.04 on its own objectively chills attorney speech. *Cf. Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019) (being subjected to a legal process is "a real consequence that objectively chills speech"). The rule establishes an express presumption that certain categories of speech are prejudicial and unconstitutionally shifts the burden of proof by forcing the speaker to prove a negative. That structure alone is chilling. As a practical matter, it imposes a prior restraint by presuming that whole categories of attorney speech are unlawful and forcing an attorney to prove otherwise in order to speak. *Cf. Citizens United*, 558 U.S. at 335 (looking to practical concerns to determine whether regulatory scheme acted as a prior restraint).

Thus, if the undersigned were to publicize Ms. Gordon's case, he would not only bear the burden of persuasion. Instead, he would also be required to overcome this Court's *presumption* that it is prejudicial for him to discuss the basic facts of Ms. Gordon's case and how they fit within CoreCivic's record of rampant civil-rights abuses. As a result, there is no way to apply LR 83.04 as written *without* violating the First Amendment. The undersigned is entitled to relief as a result.

This Court erred in holding that it cannot resolve the ongoing controversy about how LR 83.04 applies to the undersigned's speech in Ms. Gordon's case. The undersigned has the right—and duty—to seek relief from the restriction so he can adequately represent his client.[2]

---

[2] Because LR 83.04 governs attorney speech only during litigation, the rule's unconstitutional application will necessarily arise within an ongoing case. Such claims are ripe for redress collateral to that litigation. Indeed, courts routinely consider non-parties' First Amendment rights when those rights are impacted during other parties' cases. *See, e.g.*, *CBS Inc. v. Young*, 522 F.2d 234, 237 (6th Cir. 1975) (non-party had standing to challenge an order denying media access to

Simply put: LR 83.04 has been silencing the undersigned's speech about Ms. Gordon's case since the moment he filed it, and because LR 83.04 contravenes the Constitution both facially and as-applied, this Court should grant the undersigned relief.

**B.      The First Amendment Protects Attorneys' Public Commentary About Their Cases**

The undersigned's motion to clarify explained in detail why a rule restricting speech of the type gagged in *Newby* cannot satisfy strict scrutiny. The motion also explained that—regardless of this Court's power to restrict *some* attorney speech—LR 83.04(a)(2)'s placement of the burden of persuasion on the speaker is facially invalid. In denying the motion to clarify, this Court invoked its general power to "restrict the expression" of attorneys without addressing or even mentioning the rule's unconstitutional burden-shifting. *See* Doc. 40 at 2. But that power cannot justify LR 83.04(a)(2), which is a content- and speaker-based speech restriction that places the burden of proof on the wrong party.

The constitutional presumption against speech restrictions applies equally to attorneys. *Cf. Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) ("[T]his Court has not recognized 'professional speech' as a separate category of speech."). Prohibitions on attorney speech—like all others—must generally satisfy strict scrutiny. And strict scrutiny demands that the court presume that restrictions on speech are invalid unless the proponent of a gag order produces *actual* evidence to support a *specific* assertion of prejudice. *United States v. Alvarez*, 567 U.S. 709, 716-17 (2012) (emphasis added); *see also Citizens United*, 558 U.S. at 340

---

proceedings); *In re Siler*, 571 F.3d 604, 608-09 (6th Cir. 2009) (non-parties had standing to challenge a decree affecting their interests) (citing *United States v. Chagra*, 701 F.2d 354, 359 (5th Cir. 1983) (collecting cases)). *Cf. Clapper v. Clark Dev., Inc.*, 2015 WL 13688415, at *2 (6th Cir. Apr. 29, 2015) (non-party could appeal a contempt order and a prohibition on filing motions). Rather than confront any of this precedent, Defendants relied on an inapposite case that held a law firm cannot bring a Fair Debt Collections Practices Act claim on behalf of its clients. *Ohio v. Nobile & Thomas Co., L.P.A.*, 2013 WL 753857 (S.D. Ohio Feb. 27, 2013).

-11-

(explaining that strict scrutiny places the burden of proof on the government). LR 83.04 does just the opposite: On its face, the rule presumes four broad categories of attorney speech are unlawful and requires the speaker to prove otherwise. That standard violates the First Amendment.

The application of LR 83.04 to the undersigned's speech about his litigation against CoreCivic cannot satisfy strict scrutiny. CoreCivic has never offered evidence that anything the undersigned has tweeted or said to the media has prejudiced its right to a fair trial. And none of the cases in which the undersigned has been silenced have come anywhere close to a jury trial before CoreCivic settled them. General complaints of "negative media attention" and "inflammatory" language are not enough to restrict extrajudicial speech, either. *See Campbell v. Bradshaw*, 674 F.3d 578, 594 (6th Cir. 2012); *United States v. Ford*, 830 F.2d 596, 597 (6th Cir. 1987).

Defendants made similarly vague claims of general prejudice in another case the undersigned brought against them in this Court. While a motion to clarify the undersigned's rights was pending in that case, however, Defendants successfully transferred the case to the Western District of Tennessee over the plaintiff's objection. *See Tardy v. CoreCivic of Tenn., LLC*, Case No. 3:22-cv-00681, ECF 87, 100 (M.D. Tenn). The Western District, for its part, has no analogous restriction on attorney speech, calling into doubt the need for this Court to have such a vast speech-restricting rule here. *See Tardy*, 1:23-cv-01202, ECF 114 (W.D. Tenn.).

That other federal courts protect trials without an attorney-gag rule shows that LR 83.04 is not narrowly tailored to an essential need. And the fact that the Defendants willingly transferred a similar case to a district without such a rule strongly suggests that they recognize they face no real threat of trial prejudice without such a rule in place. CoreCivic's bald desire to silence the undersigned does not satisfy strict scrutiny, and LR 83.04's restraint on publicity about the

-12-

undersigned's cases against CoreCivic violates the First Amendment.

### III. CONCLUSION

This Court should reconsider its denial of the undersigned's motion to clarify. In so doing, it should hold that LR 83.04 does not prohibit the type of speech the undersigned would like to publish, nor can it constitutionally require him to prove that his speech is not prejudicial.

Respectfully submitted,

/s/ Daniel A. Horwitz_____
DANIEL A. HORWITZ, BPR #032176
MELISSA K. DIX, BPR #038535
LINDSAY SMITH, BPR #035937
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff & Movant*

## CERTIFICATE OF SERVICE

I hereby certify on this the 30th day of January, 2024, a copy of the foregoing document was filed electronically upon the individuals identified below. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on electronic filing receipt. All other parties will be served by regular U.S. Mail:

Nathan D. Tilly
Haynes T. Russell
Pentecost & Glenn
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305
ntilly@pgmfirm.com

*Attorney for CoreCivic Defendants*


J. Paul Brewer
MGC Law
120 Brentwood Commons Way, Suite 625
Brentwood, TN 37027
Paul.brewer@mgclaw.com

*Attorney for Hardeman County*

By: /s/ Daniel A. Horwitz_____
     Daniel A. Horwitz, BPR #032176